■ ROSABELL WITTMAN, as Limited Administratrix of the Estate of SHARON A. WITTMAN, Deceased, Respondent-Appellant, v STEPHEN D. GILSON, Appellant-Respondent.—Order unanimously reversed, on the facts, without costs, motions denied, and verdicts reinstated. Memorandum: The court erred in setting aside jury verdicts for wrongful death and conscious pain and suffering as inadequate and punitive dam-

ages as unfair. Although the court has the power to set aside a jury verdict when it is insufficient or excessive to such an extent as to indicate that it resulted from sympathy, passion, prejudice or corruption, the jury's assessment should not be disturbed unless it shocks the conscience of the court *(Juiditta v Bethlehem Steel Corp.,* 75 AD2d 126, 138). The trial court, in finding the amounts of compensatory damages shockingly low, failed to give weight to the determinations of credibility the jury could reasonably have made. The jury awarded only the funeral bill on the claim of plaintiff for the wrongful death of her 24-year-old daughter, and awarded $4,500 for pain and suffering. Decedent died at about 3:55 A.M. on December 19, 1982, from injuries received in a head-on collision with a vehicle operated by defendant, who pleaded guilty to criminally negligent homicide in connection with this incident. A verdict was directed as to liability and the jury was concerned solely with damages. Plaintiff's testimony, if accepted, could have supported much higher damages for decedent's death, but plaintiff was an interested witness whose testimony the jury had the right to reject. Plaintiff's account of her daughter's services in and monetary contribution to their household, amounting to 36 hours of work and $50 per week at the time of death, while not contradicted, could well have been found excessive and lacking in credibility by the jury. Decedent's former fiancé, who was a passenger in decedent's car at the time of the accident, testified that their engagement had been secretly terminated some two months before the accident but that decedent kept her ring as a gift, and that they agreed not to tell decedent's mother, with whom she lived. Both he and plaintiff testified that the broken engagement was revealed to plaintiff for the first time in January 1985. The former fiancé testified that he had not seen decedent between the time the engagement was broken and the night of the accident, and that they had not discussed renewing the engagement the night of the accident when they were together because they had planned to go Christmas shopping together the next day. The jury had the right, if it found any part of this testimony willfully false, to disregard all of it. The testimony of an economist was based on the testimony of plaintiff. Thus it was possible that the funeral bill was the only testimony the jury accepted.

The proof from the medical examiner with respect to decedent's conscious pain and suffering was that decedent lapsed into unconsciousness very rapidly and that her injuries were rapidly fatal. The only proof of preimpact terror came from

decedent's fiancé, whose testimony the jury could have disregarded. It cannot be said that the verdict for conscious pain and suffering was shockingly low.

The court explicitly found that the punitive damages of $45,000 were not excessive nor the result of passion, but concluded that it would be unfair to defendant to let them stand because he had not adequately understood his exposure to uninsured liability. This is not an appropriate remedy for that problem, and there is no merit to defendant's other arguments in support of the trial court's decision. (Appeals from order of Supreme Court, Monroe County, Tillman, J.— set aside verdict.) Present—Dillon, P. J., Boomer, Pine, Balio and Schnepp, JJ.